UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

UNITED STATES OF AMERICA,

      -against-                                     S1 12 CR 322  (RJS)

ADONY NINA,

                        Defendant.

-----------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ADONY NINA'S SUPPLEMENTAL PRETRIAL MOTIONS**


LAW OFFICES OF JEFFREY LICHTMAN
750 Lexington Avenue
15th Floor
New York, New York 10022
Ph:  (212) 581-1001
Fax: (212) 581-4999

*Attorneys for Adony Nina*

## PRELIMINARY STATEMENT

Defendant Adony Nina respectfully submits this memorandum of law in support of his supplemental pretrial motions for an Order: i) suppressing his alleged identification by Martin DeLeon Cabrera, or in the alternative, ordering a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967) to determine its admissibility; ii) compelling the government to provide additional Rule 16 discovery; and iii) permitting the defendant to file additional pretrial motions should they be required in light of recent Brady disclosures by the government.

## INTRODUCTION

Defendant Adony Nina is charged in a May 30, 2012 one count Superseding Indictment with possessing a firearm after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1). Specifically, the government alleges that on January 1, 2012 at approximately 12:42 a.m., while driving in a police van in the vicinity of Longwood Avenue and Beck Street in the Bronx, New York, NYPD Sergeant Dervent Williams and Officer Brittney Saxon heard multiple gunshots. April 9, 2012 Complaint at ¶ 2(a); Government's June 22, 2012 Opposition to the Defendant's Initial Pretrial Motions (referred to as "Govt. Pretrial Motions") at p. 2. According to the government, Sergeant Williams observed the defendant firing a gun into the air and Officer Saxon observed smoke in the area of the gunshots. Id.

Thereafter, Sergeant Williams reported over a police radio that shots had been fired by a six-foot-two "[m]ale Hispanic," wearing a "black hoodie," and a "black skully," (Govt. Pretrial Motions at p. 3) and ran in the direction of the shooter, who fled with another individual – purportedly Eduardo Rodriguez – into an apartment building located at 822 Beck Street.

1

Complaint at ¶ 2(c).  Offering a different description of the shooter, an anonymous male called 911 at 12:46 a.m. and reported observing a Hispanic male, approximately five-feet eight-inches to five-feet eleven-inches tall, wearing a black Yankee hat and a grey hoodie, fire four times into the air and run into 822 Beck Street.  Govt. Pretrial Motions at p. 3.  Minutes later, Mr. Nina was arrested on the roof of 822 Beck Street and identified as the shooter by Sergeant Williams.[1] Complaint at ¶ 2(e).

The government intends to call at trial one Martin Cabrera, who "identified the defendant and another individual, Eduardo Rodriguez, after being shown *single photographs* of these individuals by investigators."  Government's July 3, 2012 Discovery Letter, attached as Exhibit A, at p. 1. (emphasis supplied).  The use of a *single photograph* for an identification, however, is overly suggestive, unreliable and should be  "avoided where there is no overriding necessity ...." United States v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992); see also Manson v. Brathwaite, 432 U.S. 98, 116 (1977) ("single-photograph displays may be viewed in general with suspicion").  Further, the defendant is presently unaware of the facts or circumstances surrounding his identification, such as Cabrera's description of him, or even if he viewed the defendant at the time and place of the shooting.  See  United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990) (noting the importance of a witness's description of the defendant in determining the reliability of an identification).  Accordingly, a Wade hearing should be held and the government compelled to provide additional information concerning the alleged identification.  388 U.S. at 228.

---

[1] The defendant's motion to suppress his alleged pretrial identification by Sergeant Williams was previously denied without a hearing.

Additionally, the defendant has been informed by the government that a police officer recovered four shell casings from "recently fired" bullets on Beck Street shortly after the incident. Complaint at ¶ 2(f). While the government claims that these casings were all discharged from the same weapon – and requests that the defendant stipulate to this conclusion – the underlying data and reports of scientific testing have not been supplied for review by the defendant or any independent expert. See January 5, 2012 Firearms Report, attached as Exhibit B. Additionally, the government has not disclosed the results of any fingerprint identification or DNA testing on the shell casings, though such testing obviously occurred in light of its disclosure that they intend to present expert testimony on the factors that make it difficult to "recover latent fingerprints and DNA evidence from cartridge cases." Government's July 3, 2012 Expert Witness Disclosure, attached as Exhibit C, at pp. 1-2. As "reports ... of [a] scientific test or experiment" any such documents are readily discoverable pursuant to Fed. R. Crim. P. 16(a)(1)(F) and should be provided at once.

Finally, the defendant has recently received two letters concerning potentially exculpatory statements by the government's confidential witness ("CW-1") and one Fernando Contreras. See Government Letters dated October 1, 2012 and October 12, 2012, attached as Exhibits D and E, respectively. Specifically, CW-1 disclosed that Eduardo Rodriguez admitted to him that he fired the subject gun on January 1, 2012, a statement initially corroborated by Contreras, who admitted to CW-1 that he witnessed the event – although later denying this when interviewed by the government. Ex. D, at p. 1. The defendant is presently investigating if these disclosures will necessitate additional pretrial motions, or if any issues concerning the potential testimony of these witnesses may be resolved through *in limine* motions.

3

## ARGUMENT

### POINT I

### THE COURT SHOULD ORDER A WADE HEARING CONCERNING THE DEFENDANT'S ALLEGED IDENTIFICATION

According to its July 3, 2012 Discovery Letter, the government may call Martin DeLeon Cabrera at trial, having "identified the defendant and ... Eduardo Rodriguez, after being shown single photographs ... by investigators." Ex. A, at p. 1. Single-photograph identifications, however, are "impermissibly suggestive" in the absence of exigent circumstances – of which the government has failed to identify. United States v. Lumpkin, 192 F.3d 280, 288 (2d Cir. 1999); Concepcion, 983 F.2d at 377. Accordingly, the Court should order a Wade hearing to determine if the identification may be deemed sufficiently reliable. 388 U.S. at 228.

It is axiomatic that a defendant maintains a "due process right *not* to be the object of suggestive police identification procedures that create a very substantial likelihood of irreparable misidentification." United States v. Thai, 29 F.3d 785, 807 (2d Cir.1994) (emphasis supplied); Concepcion, 983 F.2d 377; Vasquez v. Poole, 331 F. Supp.2d 145, 150 (E.D.N.Y. 2004) citing Manson, 432 U.S. at 116. In addition to an invalid pretrial identification, the danger that a suggestive procedure presents is that a witness could base a later in-court identification of the defendant on his photograph, as opposed to the observance of the defendant at the crime scene. Simmons v. United States, 390 U.S. 377, 383–84 (1968); Concepcion, 983 F.2d at 377.

In determining whether a photographic identification procedure is unduly suggestive, courts are to consider the quantity of photographs shown to the witness, the way in which they were presented and the characteristics of the photographs. Thai, 29 F.3d at 808; see also United

4

States v. Maldonado-Rivera, 922 F.2d 934, 973-74 (2d Cir. 1990).  Single-photograph

identifications – also known as showups – are permitted only in exigent circumstances due to

their inherently suggestive nature.  Lumpkin, 192 F.3d at 288; Concepcion, 983 F.2d at 377;

Mysholowsky v. People of State of New York, 535 F.2d 194, 197 (2d Cir. 1976) ("We have

consistently *condemned* the exhibition of a single photograph as a suggestive practice, and,

where no extenuating circumstances justify the procedure, as an unnecessarily suggestive one")

(emphasis supplied);  United States ex. rel. Gonzalez v. Zelker, 477 F.2d 797, 801 (2d Cir. 1973)

("the showing of a single photograph is ... impermissibly suggestive").

Once a court has determined that the pretrial identification procedure was overly

suggestive, the next step is to determine if the testimony is nevertheless admissible because the

identification is "independently reliable."  Maldonado-Rivera, 922 F.2d at 973; see also Manson,

432 U.S. at 110-14 (reliability based on a totality of the circumstances); Simmons, 923 F.2d at

950 (same).  In evaluating the reliability of an identification, courts are to consider several

factors, including "the witness['] [opportunity] to view the criminal at the time of the crime, the

witness' degree of attention, the accuracy of the witness' prior description of the criminal, the

level of certainty demonstrated by the witness ... [and] the length of time between the crime and

the [identification]."  Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Here, the government has indicated that only a single photograph was utilized to identify

the defendant and offered no exigent circumstances to justify the use of this procedure.  See Ex.

A.  There can be no doubt, therefore, that the procedure employed by the government was

impermissibly suggestive.  See Lumpkin, 192 F.3d at 288; Mysholowsky, 535 F.2d at 197;

Zelker, 477 F.2d at 801.  Perhaps recognizing this fault, the government has already sought to

bolster the reliability of the identification, proffering that Cabrera had "countless occasions over the course of a period of many months to observe [the defendant and Rodriguez] prior to being shown their photographs." Ex. A, at p. 1.  Without any knowledge of Cabrera's potential testimony and the facts and circumstances surrounding the alleged identification, however, it is simply impossible to determine if this proffer establishes sufficient reliability.  Simmons, 923 F.2d at 950.  For example, if Cabrera will testify that he witnessed Mr. Nina at the time and place of the shooting, the government must establish the independent reliability of the identification by detailing, *inter alia*, Cabrera's opportunity to view the defendant, his degree of attention, the accuracy of his description to officers and the time between the event and the eventual identification.  Biggers, 409 U.S. at 199-200.  At this stage, however, the government has disclosed none of this information.  See Ex. A, at p. 1.

Accordingly, it is respectfully requested that the Court compel the government to provide additional details concerning the facts and circumstances of Cabrera's identification and order a Wade hearing to determine if such testimony may be permitted at trial.

## POINT II

## THE DEFENDANT IS ENTITLED TO
## ADDITIONAL DISCOVERY

As noted above, the defendant requests additional items from the government that are readily discoverable pursuant to Fed. R. Crim. P. 16.  First, the defendant requests *all* reports of scientific tests and examinations concerning the four shell casings from "recently fired" bullets that were recovered from the purported crime scene.  Complaint at ¶ 2(f). At present, the government has turned over only a one page report containing a single conclusory assertion – that

"a microscopic examination and comparison" of the casings indicates that they were discharged from the same weapon. Ex. B. While the government now requests that the defendant stipulate to this conclusion, it has provided none of the underlying data or detailed test results that support it – which are necessary for an independent evaluation. Following such a review, a stipulation may be forthcoming thus removing the need for testimony on this issue.

Additionally, the government has not turned over the results of any fingerprint identification or DNA testing on these same shell casings – despite its admission that such testing was conducted. Specifically, on July 3, 2012, the government provided notice of its intent to present expert witness testimony concerning factors that make it difficult to "recover latent fingerprints and DNA evidence from cartridge cases." Ex. C. Obviously, the government searched for fingerprints and DNA evidence on the shell casings and was unable to find either.

All of these requested documents are clearly discoverable pursuant to Fed. R. Crim. P. 16(a)(1)(F) as "reports ... of any scientific test or experiment" and are clearly "material to preparing the defense." See, e.g., United States v. Scott, 624 F. Supp.2d 279, 292 (S.D.N.Y. 2008) (ordering the government to turn over DNA test results); United States v. Souza, No. 06 CR 806, 2008 WL 753736, at *3 (E.D.N.Y. March 19, 2008). Accordingly, they should be disclosed forthwith.

Second, the defendant requests a color photograph of Eduardo Rodriguez following his arrest which accurately depicts the clothing that he was wearing at that time. Fed. R. Crim. P. 16(a)(1)(E) ("the government must permit the defendant to inspect and to copy ... photographs ... within [its] possession, custody, or control). Considering that Sergeant Williams indicated that the shooter was wearing a "black hoodie," and a "black skully," (Govt. Pretrial Motions at p. 3)

and the 911 caller indicated that he was wearing a "grey hoodie" and a black "Yankee" hat (id.),

a clear indication of what each of the alleged participants were wearing on the early morning of

January 1, 2012 will be necessary for the preparation of the defense – especially considering that

the government has provided <u>Brady</u> information which suggests that Rodriguez was the actual

shooter of the subject gun and not defendant Nina.

### POINT III

### THE DEFENDANT SHOULD BE PERMITTED TO FILE ADDITIONAL PRETRIAL MOTIONS IN THE EVENT THAT THEY ARE REQUIRED

In two recent letters of October 1 and 12, 2012, the government provided potentially

exculpatory statements of an unnamed cooperating witness (CW-1) and one Fernando Contreras.

<u>See</u> Ex. D; Ex. E.  First, the government revealed that over the course of two interviews, CW-1

disclosed that Eduardo Rodriguez had admitted to him that he had fired the gun on January 1,

2012 – and not Mr. Nina as the government alleges.  Ex. D, at p. 1.  Second, the government

revealed that Contreras confirmed Rodriguez's account to CW-1 as an eyewitness himself, but

when the government interviewed him directly, Contreras denied making any such claim.  <u>Id.</u>

Third, CW-1 informed the government that he spoke with Mr. Nina three to four weeks after the

shooting and was told by Mr. Nina that Rodriguez had fired the gun.  <u>Id.</u>  Only this past Friday,

however, the defendant received a second letter from the government in which they disclosed

that CW-1 now claims that Mr. Nina admitted to him that he had fired the weapon and that CW-1

lied initially about this because he feared the defendant.  Ex. E.

8

Due to recency of these disclosures and their evolving nature, counsel is still determining whether any motion practice will be necessary of if any issues concerning the potential testimony of CW-1 and Contreras may be resolved through an *in limine* motion.

## <u>CONCLUSION</u>

For the reasons stated herein, defendant Adony Nina's supplemental pretrial motions should be granted in their entirety.

Dated:          New York, New York
               October 15, 2012

                                        Respectfully submitted,


                                        _____/S/_____
                                        **JEFFREY LICHTMAN, ESQ. (JL6328)**
                                        **LAW OFFICES OF JEFFREY LICHTMAN**
                                        750 Lexington Ave., Fl. 15
                                        New York, New York 10022
                                        Ph: (212) 581-1001
                                        Fax: (212) 581-4999
                                        jhl@jeffreylichtman.com

                                        Attorney for Adony Nina