

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

March 10, 2020

**BY ELECTRONIC MAIL & ECF**

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re:    *United States v. Adony Nina*, 12 Cr. 322 (RJS); 19 Civ. 11962

Dear Judge Sullivan:

The Government respectfully submits this letter in response to the petition for relief pursuant to Title 28, United States Code, Section 2255 (the "Petition" or "Pet."), dated December 30, 2019, submitted by defendant Adony Nina ("Nina" or the "Petitioner"). Through his Petition, Nina seeks to correct, vacate, or set aside his sentence arising from his convictions, following two jury trials, on drug trafficking, firearms, and murder counts, resulting in an effective sentence of life imprisonment. For the reasons set forth below, Nina's claims are meritless and the Petition should be denied.

## Procedural History

Nina was tried two separate times, on two separate indictments. Indictment S7 12 Cr. 322 (RJS) (the "S7 Indictment") was filed on September 11, 2013, in five counts, three of which related to Nina. Count One charged Nina with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin and 280 grams and more of crack cocaine from in or about 2008 through in or about 2012, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). Count Three charged Nina with using, carrying, and possessing firearms that were brandished and discharged in furtherance of the crime charged in Count One, and aiding and abetting the same, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i)-(iii) and 2. Count Five charged Nina with possessing ammunition as a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1).

Nina's first trial (the "2013 Trial") commenced on October 15, 2013, and ended on October 31, 2013, when Nina was convicted of Counts One and Three, and acquitted of Count Five.

Hon. Richard J. Sullivan
March 10, 2020

Indictment S12 12 Cr.322 (RJS) (the "S12 Indictment") was filed on April 20, 2015, in two counts.  Count One charged Nina with causing the intentional killing of Aisha Morales on June 28, 2011, in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.  Count Two charged Nina with using, carrying, and possessing a firearm and aiding and abetting the same, and thereby causing the murder of Aisha Morales, in violation of Title 18, United States Code, Sections 924(j)(1) and 2.

Nina's second trial (the "2015 Trial") commenced on May 5, 2015, and ended on May 19, 2015, when Nina was convicted on both counts.

On March 21, 2016, the Court sentenced Nina principally to concurrent terms of life imprisonment on Count One of the S7 Indictment and Count One of the S12 Indictment; ten years' imprisonment on Count Three of the S7 Indictment, to run consecutive to the afore-mentioned life sentences; and life imprisonment on Count Two of the S12 Indictment, to run consecutive to all other counts.  Nina currently is serving his sentence.

On September 15, 2017, Nina appealed the judgments of conviction and his sentence, arguing that: (i) the evidence was insufficient to support his convictions on Counts One and Two of the S12 Indictment; (ii) the Court abused its discretion in admitting evidence of violent acts carried out by Nina's coconspirators; (iii) the Court erred in denying Nina's motion for a mistrial during the 2013 trial, when evidence of his relationship with an underage female was introduced; (iv) the conviction on Count One of the S12 Indictment should be vacated, because the S12 Indictment failed to specify a drug quantity; (v) the sentence on Count Two of the S12 Indictment was procedurally unreasonable; and (vi) the sentence on Count One of the S12 Indictment was substantively unreasonable.

On May 17, 2018, the Second Circuit affirmed Nina's conviction by summary order.  On August 20, 2018, the mandate issued.  On November 28, 2018, a petition for certiorari was filed, which was denied on February 20, 2019.  The timely filing of the instant Petition followed, on December 30, 2019.

## Argument

Nina argues in his Petition that:

(1) The order in which the Court took the jury verdict on Count One of the S7 Indictment at the 2013 Trial violated the Due Process Clause and Double Jeopardy Clause, because the foreperson stated that Nina was guilty on Count One before establishing drug weight ("Claim One");

(2) The jury should not have been charged on an aiding and abetting on Count Three of the S7 Indictment and Counts One and Two of the S12 Indictment, because those counts did not properly allege "an offense against the United States" ("Claim Two");

(3) The convictions on Count One of the S12 Indictment at the 2015 Trial, and Count One of the S7 Indictment at the 2013 Trial, violated the Double Jeopardy Clause ("Claim Three");

(4) Counsel was ineffective for failing to raise Claim One ("Claim Four");

2

Hon. Richard J. Sullivan
March 10, 2020

     (5) Counsel was ineffective for failing to raise Claim Two ("Claim Five"); and
     (6) Counsel was ineffective for failing to raise Claim Three ("Claim Six").

     As a preliminary matter, Claims One through Three are procedurally barred, because Nina failed to raise them on direct appeal. Further, Claims Four through Six are meritless. Accordingly, the Court should deny the Petition in its entirety.

## I.    Claims One Through Three Are Procedurally Barred

### A.  Applicable Law

     It is well settled that Section 2255 is not designed as a substitute for a direct appeal, *see United States* v. *Frady*, 456 U.S. 152, 165 (1982), *United States* v. *Addonizio*, 442 U.S. 178, 184-85 (1979), and that a federal prisoner cannot use a Section 2255 petition to litigate questions that could have been raised on direct appeal but were not, *see Rosario* v. *United States*, 164 F.3d 729, 731 (2d Cir. 1999). Society's interest in repose of criminal judgments animates these procedural rules and compels their vigorous enforcement. *See, e.g.*, *Harrington* v. *Richter*, 562 U.S. 86, 103 (2011); *McCleskey* v. *Zant*, 499 U.S. 467, 490-91 (1991). Thus, where a petitioner has procedurally defaulted a claim by failing to raise it at trial, sentencing, or on direct appeal, the claim may be raised in habeas only if the petitioner "can first demonstrate either 'cause' and 'actual prejudice,' or that he is 'actually innocent.'" *Bousley* v. *United States*, 523 U.S. 614, 622 (1998) (quoting *Murray* v. *Carrier*, 477 U.S. 478, 485, 496 (1986); *Wainwright* v. *Sykes*, 433 U.S. 72, 87 (1977), and *Smith* v. *Murray*, 477 U.S. 527, 538 (1986); *see also Rosario*, 164 F.3d at 732 (defendant must demonstrate "either (1) 'cause for failing to raise the issue, and prejudice resulting therefrom,' . . . or (2) 'actual innocence'" (citations omitted).).

     The Supreme Court has made clear that "cause" is measured by a stringent standard of diligence. *See, e.g.*, *Coleman* v. *Thompson*, 501 U.S. 722, 752 (1991) ("Cause" is "something external to the petitioner" which "cannot be fairly attributed to him"). "Cause" to excuse a procedural default may exist where a claim "is so novel that its legal basis [was] not reasonably available to counsel." *Reed* v. *Ross*, 468 U.S. 1, 16 (1984). A claim is "reasonably available," however, if at the time of the default, it was being raised by litigants and addressed by the courts. *See Bousley*, 523 U.S. at 622-23 (claim not "novel" where judicial decisions in the reporters show that the legal basis for the claim was "reasonably available").

     Critically, the Supreme Court has long made clear that a petitioner cannot demonstrate "cause" for failing to raise a claim simply because doing so would have been futile. It matters not that the claim may have been doomed under prevailing law; even when the law is against a contention, a litigant must make the argument to preserve it. As the Supreme Court stated in *Bousley*: "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to the particular court at that particular time." 523 U.S. at 623 (quoting *Engle* v. *Isaac*, 456 U.S. 107, 130 n.35 (1982).

     If a petitioner cannot demonstrate "cause" for his procedural default, he can attempt to obtain review for his claim by establishing "that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey*, 499 U.S. at 494-95. The Supreme Court

Hon. Richard J. Sullivan
March 10, 2020

has repeatedly emphasized that by the term "fundamental miscarriage of justice," it means the "actual innocence" of the petitioner.  *See Herrera* v. *Collins*, 506 U.S. 390, 404 (1993) (referring to rule requiring "proper showing of actual innocence" as the "fundamental miscarriage of justice exception" and explaining that the purpose of the exception is "to see that federal constitutional errors do not result in the incarceration of innocent persons"); *Murray* v. *Carrier*, 477 U.S. at 495-96 (explaining that the exception is reserved for those extraordinary cases "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").  As the Court explained in *Schlup* v. *Delo*, 513 U.S. 298 (1995):

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, this Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Id.* at 321.

Furthermore, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer* v. *Whitley*, 505 U.S. 333, 339 (1992).  This extremely narrow test is satisfied only if the petitioner can demonstrate that his acts "have been ruled not to constitute criminal conduct."  *Underwood* v. *United States*, 166 F.3d 84, 88 (2d Cir. 1999); *see also Reyes-Requena* v. *United States*, 243 F.3d 893, 904 (5th Cir. 2001) (petitioner must establish that he or she "may have been convicted of a nonexistent offense").  For example, in *Bousley*, the Supreme Court remanded the case for a determination whether the petitioner had satisfied the "actual innocence" test.  523 U.S. at 624.  There, the Court was considering whether the petitioner could obtain relief based on *Bailey* v. *United States*, 516 U.S. 137 (1995), in which the Court curtailed the reach of the version of 18 U.S.C. § 924(c)(1) in effect at the time of Bailey's conduct and held that the term "use" of a weapon in the statute required "active employment" of the weapon.  *Id.* at 617.  Petitioner Bousley had failed to raise any *Bailey*-type claim; *Bailey* itself had been handed down after his appeal was complete.  *See* 523 U.S. at 622-23.  The Supreme Court ruled that Bousley would be afforded the opportunity, on remand, to demonstrate "actual innocence"—that is, that he had not "used" a firearm within the meaning of the term adopted in *Bailey*—but that his claim would be procedurally barred absent such a demonstration.  *See id.* at 624.

### B. Discussion

Nina raised six issues on appeal, none of which were Claims One through Three. Accordingly, these claims are procedurally defaulted on collateral attack unless Nina can show cause and prejudice or actual innocence.  Nina does not attempt to show either, because he cannot.  Further, as discussed in Section II, these claims have no merit.

Hon. Richard J. Sullivan
March 10, 2020

## II.     Claims Four Through Six Are Meritless

Nina repeats Claims One through Three, restyling them as ineffective assistance claims, in Counts Four through Six.  Because these claims have no merit, Nina cannot show that his counsel's representation fell below an objective standard of reasonableness, or that there is a reasonable probability that the result of the proceedings would have been different, had defense counsel made the objections or brought the motions that Nina describes.

### A.  Applicable Law

Where a petitioner argues that the "cause" for the procedural default was a result of ineffective assistance of counsel, the petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984); *United States v. Whitman*, 115 F.Supp.3d 439, 445 (S.D.N.Y. 2015).  Ineffective assistance of counsel claims include both the "cause" and "prejudice" prongs because the *Strickland* standard also requires a showing of prejudice.

Ineffective assistance of counsel may both form the basis of relief under Section 2255 and constitute cause for the procedural default of an independent claim.  To establish ineffective assistance of counsel, the petitioner must satisfy the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a showing "(1) that [ ] counsel's performance was deficient, and (2) 'that the deficient performance prejudiced the defense.' "  *Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007) (quoting *Strickland*, 466 U.S. at 687).  "[C]ounsel is strongly presumed to have rendered adequate assistance...."  *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690).  As a result, "[s]urmounting Strickland's high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

A showing of deficient performance requires the defendant to prove that "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 687-88.

### B.  Discussion

#### 1.  Claim Four

During the 2013 Trial, after the jury announced that it had a verdict, the Court's clerk asked the foreperson the questions set forth on the verdict form.  The foreperson then announced the verdict on each question.  The relevant colloquy on Count One was:

THE LAW CLERK:  For Count One, on the charge of participating in a conspiracy to distribute or possess with intent to distribute a controlled substance in Count One, you the jury find the defendant Adony Nina?

THE FOREPERSON:  Guilty.

Hon. Richard J. Sullivan
March 10, 2020

THE LAW CLERK:  Do you find that defendant Adony Nina knew or reasonably should have foreseen that the conspiracy involved mixtures and substances containing a detectable amount of heroin?

THE FOREPERSON:  Yes.

THE LAW CLERK:  Do you find that defendant Adony Nina knew or reasonably should have foreseen that the conspiracy involved one kilogram or more of mixtures and substances containing a detectable amount of heroin?

THE FOREPERSON:  Yes.

THE LAW CLERK:  Do you find that defendant Adony Nina knew or reasonably should have foreseen that the conspiracy involved mixtures and substances containing a detectable amount of cocaine base in a form known as crack?

THE FOREPERSON:  Yes.

THE LAW CLERK:  Do you find that defendant Adony Nina knew or reasonably should have foreseen that the conspiracy involved 280 grams or more of mixtures and substances containing a detectable amount of cocaine base in a form known as crack?

THE FOREPERSON:  Yes.

(2013 Trial T. 2417-18).

Nina now argues that this procedure violated his rights under the Due Process Clause and Double Jeopardy Clause, because "the Jury Foreperson announced a verdict of guilty for Count One before establishing the elements—i.e., drug type and quantity—which are necessary to constitute the aggravated drug crime charged in Count One."  (Pet. 20).

This argument is meritless.  "The formulation of special verdict questions rests in the sound discretion of the trial judge," and reversal is warranted only "if the questions mislead or confuse the jury, or if they inaccurately frame the issues to be resolved by the jury."  *Vichare v. AMBAC Inc.*, 106 F.3d 457, 465 (2d Cir. 1996).  Further, the special verdict questions "must be read in conjunction with the judge's charge to the jury."  *Id.* at 466.

The special verdict form in the 2013 Trial was clear, as was the jury charge, and both accurately framed the issues to be resolved by the jury.  The jury was first required to find whether or not Nina joined the conspiracy charged in Count One.  If they found Nina guilty of joining the conspiracy, they were then to determine whether the conspiracy involved more than certain specified amounts of heroin and crack, which would enhance the applicable mandatory minimum and statutory maximum sentences.  (2013 Trial T. 2333).  Nina's objection to the order of the questions ignores the nature of the crime charged in Count One—the jury could have

Hon. Richard J. Sullivan
March 10, 2020

answered "guilty" to the first question, finding that Nina participated in the conspiracy charged in Count One, and then answered no to the third and fifth questions, finding that Nina could not have foreseen that the conspiracy would involve the requisite quantity of drugs.  In that case, Nina would have been guilty of the conspiracy, in violation of 21 U.S.C. § 841(b)(1)(C), with no mandatory minimum, not what Nina refers to as the "aggravated drug crime" with the 10-year mandatory minimum, in violation of 21 U.S.C. § 841(b)(1)(A).  The order of the questions therefore made perfect sense, and conformed with the applicable law.

## 2. Claim Five

Nina argues that the jury was improperly charged in both trials with an aiding and abetting theory on Count Three of the S7 Indictment and Counts One and Two of the S12 Indictment, because the aiding and abetting statute, 18 U.S.C. § 2, does not apply to federal crimes, but only to "offense[s] against the United States.," which Nina argues is a narrower category.  (Pet. 8-11).

This is an overly technical reading of the aiding and abetting statute, which provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."  18 U.S.C. § 2.  The Supreme Court has made clear that 18 U.S.C. § 2 is "a general aiding and abetting statute applicable to all federal criminal offenses."  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 181 (1994); *see also Rosemond v. United States*, 572 U.S. 65, 70-71 (2014) (noting that 18 U.S.C. § 2 applies to any federal offense).  "Offense against the United States" is not a technical term that limits the federal offenses to which the statute applies.  Consequently, Nina's argument has no merit, and the jury was properly charged as to an aiding and abetting theory on the three challenged counts, all of which are federal criminal offenses.

## 3. Claim Six

### a. Relevant Background

As noted above, the S7 Indictment was filed on September 11, 2013, in five counts, several of which charged Nina.  In particular, Count One of the S7 Indictment charged Nina with conspiracy to distribute and possess with intent to distribute one kilogram and more of heroin and 280 grams and more of crack cocaine, from in or about 2008 through in or about 2012, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A).  Nina was convicted of Count One of the S7 Indictment, and a related Section 924(c)(1)(A)(iii) firearm discharge count, at the conclusion of the 2013 Trial.

Subsequent to the 2013 Trial, the Government obtained sufficient evidence to charge Nina in connection with the June 28, 2011 murder of Aisha Morales.  (*See* Dkt. Entry 461, Apr. 1, 2015 Tr. at 9).  The S12 Indictment was filed on April 20, 2015, in two counts.  As relevant to Nina's claim, Count One of the S12 Indictment charged Nina with causing the intentional killing of Aisha Morales on June 28, 2011, in violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.  The S12 Indictment alleged that, "while engaged in an offense punishable under Section 841(b)(1)(A) of Title 21, United States

Hon. Richard J. Sullivan
March 10, 2020

Code, namely, a conspiracy to distribute heroin and cocaine base," the defendant "intentionally and knowingly killed and counseled, commanded, induced, procured, and caused the intentional killing of Aisha Morales." (Dkt. Entry 470, ¶ 1). The narcotics conspiracy underlying Count One of the S12 Indictment was the same conspiracy charged in Count One of the S7 Indictment, for which the defendant was convicted following the 2013 Trial. Nina was convicted of Count One of the S12 Indictment, along with a Section 924(j) murder count, at the conclusion of the 2015 Trial.

The Court sentenced Nina on all counts of conviction from the S7 and S12 Indictments at a single sentencing proceeding held on March 21, 2016. With respect to Counts One of the S7 and S12 Indictment, the Court sentenced the defendant to concurrent terms of life imprisonment on those two counts.

### b. Relevant Legal Standards

The Double Jeopardy Clause of the Fifth Amendment provides that: "[no] person [shall] be subject for the same offence to be twice put in jeopardy of life and limb . . ." U.S. Const. amend. V. "The Double Jeopardy Clause protects a person from prosecution for the same offense following either an acquittal or a conviction, and it protects also against multiple punishments for the same offense." *United States v. Morgan*, 51 F.3d 1105, 1113 (2d Cir. 1995) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

"Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature—in this case Congress—intended that each violation be a separate offense." *Garrett v. United States*, 471 U.S. 773, 778 (1985); *see also United States v. Mohammed*, 27 F.3d 815, 819 (2d Cir. 1994) ("Where the same conduct violates two statutory provisions, whether each violation is a separate offense is a question of legislative intent."). "Courts typically apply the *Blockburger* 'same elements' test to determine whether two crimes are the 'same offense.'" *United States v. Honken*, 541 F.3d 1146, 1156 (8th Cir. 2008). "The *Blockburger* 'same elements' test requires, 'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.'" *Id.* (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

However, "[t]he rule stated in *Blockburger* was applied as a rule of statutory construction to help determine legislative intent." *Garrett*, 471 U.S. at 778-79. "Insofar as the question is one of legislative intent, the *Blockburger* presumption must of course yield to a plainly expressed contrary view on the part of Congress." *Id.* at 779. Accordingly, "the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Id.* (citing *Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *Albernaz v. United States*, 450 U.S. 333, 340 (1981); *Whalen v. United States*, 445 U.S. 684, 691-692 (1980)); *see also United States v. Khalil*, 214 F.3d 111, 117-18 (2d Cir. 2000) ("In a single prosecution charging a defendant with violations of two statutes, if the statutes make clear that Congress intended to impose cumulative punishments, the court is authorized to impose those punishments and the Double Jeopardy Clause is not violated . . . If the statutes themselves do not make the

Hon. Richard J. Sullivan
March 10, 2020

legislature's intent explicit, the test fashioned in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), may be used to determine whether cumulative punishments were intended.").

With respect to violations of Section 848(e)(1)(A) and its predicate narcotics crimes, "[e]very court of appeals to consider the question has concluded that § 848(e)(1)(A) sets forth separate offenses—offenses for which the defendant may be prosecuted, convicted, and punished in addition to the underlying predicate drug-trafficking offenses." *United States v. Vasquez*, 899 F.3d 363, 383 (5th Cir. 2018), *as revised* (Aug. 24, 2018), *cert. denied*, 139 S. Ct. 1543 (2019) (citing *Honken*, 541 F.3d at 1154-58; *United States v. Collazo-Aponte*, 216 F.3d 163, 200 (1st Cir. 2000), *cert. granted in part and judgment vacated*, 532 U.S. 1036 (2001); *United States v. Snow*, 48 F.3d 198, 200 (6th Cir. 1995); *cf. United States v. McCullah*, 76 F.3d 1087, 1104-05 (10th Cir. 1996) (reaching the same conclusion regarding the continuing criminal enterprise predicate)); *United States v. NJB*, 104 F.3d 630, 633-35 (4th Cir. 1997) (addressing Section 848(e) as a whole); *United States v. Villarreal*, 963 F.2d 725, 727-28 (5th Cir. 1992) (addressing Section 848(e)(1)(B)).

### c.  Discussion as to Claim Six

Notwithstanding that the Section 846 drug conspiracy offense charged in the S7 Indictment does not require proof of additional facts aside from what is needed to establish a violation of the Section 848(e)(1)(A) murder offense charged in the S12 Indictment (and would therefore fail the *Blockburger* test), it is clear that Congress intended Section 848(e)(1)(A) offenses to carry cumulative punishments, and that the two crimes represent distinct offenses.

Given the text of the Section 848(e), Congress's legislative intent is clear on the face of the statute.  As the Eighth Circuit observed in its well-reasoned *Honken* decision, "[t]he plain text of 21 U.S.C. § 848(e) states the § 848(e) punishment is authorized 'in addition to other penalties set forth in this section.'  Thus, Congress expressly authorized separate punishments for drug conspiracy offenses punishable under 21 U.S.C. § 841(b)(1)(A) and for conspiracy murders . . . under 21 U.S.C. § 848(e).  Nothing in the statute suggests Congress intended to preclude those multiple punishments from being imposed by way of successive prosecutions." *Honken*, 541 F.3d 1146, 1155 (8th Cir. 2008).

Nor is there any constitutional bar to the prosecution of both offenses because— notwithstanding the fact that Section 848(e)(1)(A) contains all of the elements of Section 846— under the Supreme Court's decision in *Garrett*, the two offenses are not the same.  Of particular note, Section 848(e)(1)(A) requires the Government to "prove a number of elements in addition to the elements required to prove the underlying drug conspiracy offense." *Id.* at 1157.  Moreover, Section 848(e)(1)(A) punishes "a collateral course of conduct to the conduct at issue" in the predicate Section 846 drug conspiracy offense. *Id.*  In short, "what is prohibited and punished by the statute defining a drug conspiracy offense is an agreement to commit drug-trafficking offenses, but what is prohibited and punished by the statute defining a drug conspiracy murder offense is the murder, albeit, a murder related to the drug-trafficking

9

Hon. Richard J. Sullivan
March 10, 2020

conspiracy."[1]  *Id.* at 1158.  Accordingly, "drug conspiracy and drug conspiracy murder are different offenses for double jeopardy purposes."  *Id.*

Furthermore, as noted above, every circuit to have squarely addressed this issue has held that Section 848(e)(1)(A) sets forth an offense separate from its underlying predicate drug-trafficking offense.  *See Vasquez*, 899 F.3d at 383 (collecting cases).  While the Second Circuit has yet to confront the issue, *see United States v. Jackson*, 658 F.3d 145, 151 (2d Cir. 2011) (declining to decide whether Section 846 and Section 848(e)(1)(A) should be viewed as separate offenses of double jeopardy purposes),[2] several district courts have come to the same conclusion, including courts in this District.  *See, e.g.*, *Sanchez v. United States*, No. 10-CR-392-19 (CS), 2017 WL 11473377, at *5 (S.D.N.Y. Oct. 12, 2017) (rejecting defendant's argument that the Court should not have sentenced him on both a Section 848(e) murder count and its predicate drug conspiracy count); *United States v. Guerrero*, 52 F. Supp. 3d 643, 649 (S.D.N.Y. 2014) (noting in the context of a Fair Sentencing Act claim that "§ 848(e)(1)(A) has been found to be a separately punishable offense for the purposes of double jeopardy"); *United States v. Mitchell*, No. 03-CR-227A, 2005 WL 2476159, at *6 (W.D.N.Y. Oct. 6, 2005) (concluding that "§ 848(e)(1) defines an offense separate and apart from the predicate drug crime"); *but see United States v. Holland*, 3 F. Supp. 2d 1293, 1298 (N.D. Ala. 1998), aff'd, 198 F.3d 263 (11th Cir. 1999) (holding that the Double Jeopardy Clause precluded the defendant's prosecution for a violation of Section 848(e)(1)(A) where he had been previously convicted of its Section 846 narcotics conspiracy offense).

For all of these reasons, the defendant's double jeopardy claim as to Counts One of the S7 and S12 Indictments should be rejected.

---

[1]  The relationship between Section 848(e)(1)(A) and Section 846 is similar in this regard to that between Section 924(c) and its predicate crimes of violence and drug trafficking crimes.  "[C]ourts have consistently held that the punishment for a violation of 18 U.S.C. § 924(c) is to be imposed in addition to the penalty for the predicate crime of violence or drug trafficking crime."  *Mitchell*, 2005 WL 2476159, at *5 (citing *United States v. Allen*, 247 F.3d 741, 768 (8th Cir. 2001) (cumulative sentences for bank robbery under 18 U.S.C. § 2113 and for using a firearm pursuant to § 924(c) were intended by Congress based on the "in addition to" language of § 924(c) and therefore permissible, despite "the likely failure of the two statutes to pass the *Blockburger* same elements test ..."); *Khalil*, 214 F.3d 111 at 117; *United States v. Lawrence*, 928 F.2d 36 (2d Cir. 1991); *United States v. Jones*, 34 F.3d 596, 601-02 (8th Cir. 1994)).

[2]  The Supreme Court's decision in *Rutledge v. United States*, 517 U.S. 292, 301 (1996), cited by the *Jackson* Court as evidence of mixed Supreme Court precedent on the issue, *see Jackson*, 658 F.3d at 151, is inapposite here.  In finding that a Section 846 narcotics conspiracy was a lesser included offense of a Section 848(c) conspiracy to conduct a continuing criminal enterprise, the *Rutledge* court did not address the murder offense set forth in Section 848(e)(1)(A), which is at issue in this case.

Hon. Richard J. Sullivan
March 10, 2020

## Conclusion

      For the forgoing reasons, the Government respectfully requests that the Court deny the Petition in its entirety.  In addition, because Nina has not made a substantial showing of the denial of a constitutional right, the Court should refuse to issue a certificate of appealability, pursuant to 28 U.S.C. § 2253(c)(2), and should certify that any appeal from such a decision would not be taken in good faith, pursuant to 28 U.S.C. § 1915.  *See Lozada v. United States*, 107 F.3d 1011, 1016-17 (2d Cir. 1997), *abrogated on other grounds by United States v. Perez*, 129 F.3d 255, 259-60 (2d Cir. 1997).

                      Respectfully submitted,

                      GEOFFREY S. BERMAN
                      United States Attorney

By:          /s/
                      Christopher J. DiMase/ Margaret Graham
                      Assistant United States Attorneys
                      (212) 637-2433 / 2923

cc:     Adony Nina, USMS # 66796-054 (by U.S. mail)